Sanders, Janet L., J.
This is a putative class action brought pursuant to Sections 11, 12 and 15 of The Securities Act of 1933. Plaintiffs are investors who purchased stock in the defendant Ovascience, Inc. (Ovascience or the Company). They allege that a Registration Statement issued in connection with a secondary offering of Ovascience stock on January 8, 2015 (the January 8 Offering), contained false statements and material omissions of fact concerning an experimental fertility treatment (AUGMENT) that Ovascience was in the process of developing. In addition to suing Ovascience, plaintiffs have also named as defendants certain of the Company’s officers and directors (collectively, The Ovascience defendants) as well as three investment banks, J.P. Morgan, Credit Suisse and Leerink Partners, which were the underwriters in the January 8 Offering (the Underwriters). The case is now before the Court on the defendants’ Motion to Dismiss pursuant to Rule 12(b)(6), Mass.R.Civ.P. After careful review of the parties’ submissions, the Court concludes that the Motion should be DENIED. This memorandum sets forth a brief explanation of the reasons for that decision.
The defendants make two arguments in support of their motion. First, they contend that the Complaint fails to allege sufficient facts, under the standard set forth in Iannachino v. Ford Motor Co., 451 U.S. Mass. 623 (2008), that the Registration Statement contained material misrepresentations.[1] This Court disagrees. The Complaint sets forth detailed allegations that the Registration Statement contained misleading statements or failed to include material facts regarding: 1) the science behind AUGMENT: 2) the success rate; 3) the reason why the Company undertook its studies outside of the United States; and 4) the profitability of the Company. Plaintiffs allege that, as a result of the falsely optimistic picture The Registration Statement painted regarding AUGMENT’S prospects as a fertility treatment, stocks prices for Ovascience briefly shot up (with certain of the individual defendants profiting from that rise), then sharply declined when the facts regarding AUGMENT emerged just a few months later — facts that were known at the time the Registration Statement issued. This more than satisfies the requirement that the Complaint set forth facts “plausibly suggesting (not merely consistent with) an entitlement to relief. . Iannacchino, supra, quoting Bell Atl. Corp. v. Twombly, 550 Mass. 544, 555 (2007).
*50 The second argument concerns the issue of standing. The claims are brought pursuant to Section 11, 12 and 15 of the Securities Act. In order to have standing to bring a claim under Section 11, a plaintiff must have purchased shares either in the offering in question or, if the shares were purchased in an aftermarket, they must be “traceable" to the offering at issue. Where a company has made more than one stock offering, it may be quite difficult for a plaintiff to meet Section ll’s standing requirement. Standing is even more difficult to demonstrate if the claim is asserted under Section 12, which imposes liability only on a “séller” as defined by the statute. A “seller” includes a non-owner (like an underwriter) if the defendant solicited the purchase, motivated at least in part by its own financial interest. See Pinter v. Dahl, 486 U.S. 622 (1988). However, the plaintiff must show a direct connection between the purchase and the offering in question. Language that the shares were purchased “pursuant and/or traceable to” the offering documents is not enough. Plumbers Union Local No. 12 v. Nomura Asset Acceptance Corp., 632 F.3d 762 (1st Cir.) (2011) (affirming dismissal of Section 12 claim for lack of standing); see also, ARIAD Pharmaceuticals, Inc. Securities Litigation, No. 15-1491, 2016 U.S.App. LEXIS 21235 (Nov. 28, 2016) (affirming dismissal of Section 11 claim where plaintiff alleged only that shares were traceable to the offering).
In the instant case, the Complaint alleges that all plaintiffs purchased stock “pursuant and/or traceable to” the January 8 Offering. Relying on Nomura and ARIAD, defendants argue this is insufficient to give the plaintiffs standing to bring this case. Ovascience points out that, at the time of the offering, there were over 24 million shares of Ovascience outstanding; it argues that, because the Registration Statement related to a secondary offering, some greater level of specificity is required. See In re Century Aluminum Securtties Litigation, 729 F.3d 1105, 1107 (9th Cir. 2013) (if it is only “possible” that the plaintiff purchased the stock in the offering, that is not enough to confer standing under Section 12).
If the Complaint alleged only that plaintiffs’ shares were traceable to the January 8 Offering, the defendants would be correct. But as to plaintiff.Westmore-land, it alleges more, stating that Westmoreland purchased its stock on the day of the January 8 Offering and at the Offering price. This Court concludes that these additional facts are sufficient to permit a reasonable inference that Westmoreland purchased its stock directly in the Offering, so as to have standing under both Section 11 and section 12.[2] With at least one named plaintiff (Westmoreland) having satisfied standing requirements, dismissal of this class action is not warranted under Rule 12(b)(6).

 There have been three iterations of the complaint since this case began. This Court looks to the most recent one, entitled “Class Action Complaint for Intervention for Violation of tlie Securities Act of 1933,” filed November 4, 2016.

 The Complaint also asserts a claim against the individual defendants under Section 15, which imposes secondary liability on “control persons.” Given this Court’s ruling on the Section 11 and Section 12 claim, the Section 15 claim also survives.